Before we begin, I wanted to say at the outset that it is the general policy of this court, and certainly my practice, to grant oral argument for all those who request it. And as I was preparing for this sitting on the calendar, it said it was on submission. But checking the docket, it was clear that on May 3rd, 2017, that Mr. Bashman requested oral argument. And I believe the position of the government was that if oral argument was requested, they, too, would want oral argument. And so that the initial notice on the calendar, which you should have received, should have been that oral argument would occur in this case. So I'm sorry for the short notice when I observed this issue about a week or ten days ago. But so thank you for both coming on short notice. Well, thank you, Your Honor. I continue to hold out hope of oral argument, so I kept my calendar clear. So thank you. May it please the Court, Howard Bashman for Defendant Appellant Rudell Clark Mullings. A review of the party's briefs in this case makes clear that there are three issues before the Court on which my client needs to prevail in order to obtain a resentencing here. First, may a US district judge rely on state law in deciding what federal, what sentence to impose for a federal offense in a non-assimilative crimes case. That there's a separate category of cases where it's necessary and appropriate to look at state law, but this case is not in that category. Second- There are a lot of assumptions in your framing of that issue, but go ahead. Okay. Second, did Judge Corman in fact rely on New York state law in imposing the 84 month sentence that he imposed on the defendant here? And third, involves the standard review. Is the standard review harmless slash harmful error as my side contends? Or is it only plain error review as the government contends? If I can start with point one, which- I might start, if it were up to me, I might start with point two. Okay. It is up to you. Did he rely on, well, I defer to the Chief, but did he rely on state law here? Right. As the court, no doubt, is very well aware, under 18 USC 3553C, a federal district judge is required when imposing sentence to give his oral statement of reasons for the sentence. And if you were to look to the appendix at pages 119 through 122A, the sentence is imposed beginning on page 119. And of course, there are many other components of the sentence beyond just its length that take the explanation of what the sentence consists of into page 121. It's on page 121 where Judge Corman begins to explain why he decided to impose the sentence. And he states that out of curiosity, he looked at New York state law and noticed that it did not consider whether there was consent from the victim or not, which is similar to federal law. And then at the conclusion of his reasons on page 122A, Judge Corman said that the sentence imposed here exceeds the five year mandatory minimum that would apply under New York state law for a violence rape, a B classification felony, as we explained in our reply brief. It's not clear that that's the closest state law offense to the crime as to which my client pleaded guilty. But nevertheless, it was mentioned twice, and because it's there in the statement of reasons, we believe that it was a reason unless the judge were to say either that he did not rely upon it in any way. Or perhaps the actual sentence that he imposed indicates itself that he did not rely upon it. Here the guidelines range was 12 to 18 months. If Judge Corman had said- Could we unpack this just for a moment? Yes. In a sense, following up on Judge Loyer's questions. So the district court says out of curiosity. Why doesn't that suggest that he was simply trying to get a sense of how things might be done in the state court? To say out of curiosity doesn't necessarily mean I rely on something. In fact, it seems to suggest arguably something else, that I'm just looking at it. And as you point out, there are two occasions when he references New York law. Only once did it reference the mandatory minimum sentence for rape. And only in passing, your adversary would argue. How do you respond to that? Well, I'm willing to concede that if it was only the out of curiosity reference at the outset of the reasons. That that would not be enough to require the sentence to be sent back, the case to be sent back for resentencing. But when the judge is referring specifically to the state law sentence and that it's five year mandatory minimum, and then he imposes a sentence that in fact is two years above that. It's clear under the law of other circuits that we rely upon, that the Sixth Circuit in the Malone case, the Eighth Circuit in Jeremiah. This court in two cases that we've cited notes that a federal district judge is not required to take state law into account. I'd like to draw to your Honor's attention that in the Johnson case of this court from 2007, footnote four goes on to say that we're holding that a federal judge is not required to take the state law sentence into account. But we don't need to go so far as to say that the district judge can't do it if he wants to do it. And so by means of this appeal, we're asking this court to go further than it has gone thus far in the two cases over the past 24 years that have presented this question. And actually affirmatively- Even if you go before what he said about the five year sentence under New York law, he said the most important part of the sentence here is to send a message. So that's deterrence, and send a message that will deter other corrections officers from doing the same thing. And right before that, he talks about how it was so terrible that there was no consent here, that it was something now the defendant has conceded that it was forcible rape. He emphasized that a lot more than he did this reference to the New York law, didn't he, in his remarks? The judge certainly gave a whole number of other reasons for picking the sentence that he imposed, including, we would say, an impermissible reason. And under this court's holdings in the Leung case and in Villa Fuerte, the court has said that where a district judge relies on both permissible and impermissible reasons in selecting a sentence, it's necessary to send the case back in order for the judge to reconsider what sentence to impose, relying only on the permissible reasons. So I'm not standing here today arguing that a seven year sentence could not have been imposed by this judge in this case. The mandatory, the maximum sentence for this offense is 15 years. So it is possible that the judge could impose the same sentence on remand. The difference would be that the reason, one of the reasons that he would be giving during the remand would not include an impermissible reason once this court told him that that was an impermissible reason to rely upon. You want us to reach this, this is why this is your first question, to reach the question that we ducked in Johnson. And that's fundamentally really what you're looking for. And then of course you want results from that, but that's really what you're here for. Right, this case does present that question. And what's interesting, perhaps as an intellectual matter, is that typically it's the defendant who is saying that the district judge should take state law into account. Because in many areas state law is less, especially in drug cases and perhaps in gun possession. Unusual, so why do you want us to reach it? I mean, maybe in this case it might help your client, I guess. Exactly, because in this case- I don't know that it would help defendants. Well, Your Honor, I'm only a lawyer for this one person. I understand. And in fact, this court has essentially gone up to the edge there and just said that it's not necessary to do. I think that this court's already held that- We could do that here, too. Well, this court has held that- Could we do that here? Couldn't we do that here as well? And still rule in my favor? Well, we do not necessarily have to determine if we rule against you that, as the Eighth Circuit did, that district courts are not permitted under any circumstances to consider federal state sentencing disparities. I agree. If this court, for example, were to side with the government and say that only plain error review applies here, for example, you don't need to reach the merits of the substantive question. But I want to go back to a point that you had said before about would my position harm other criminal defendants, because I think that I fundamentally disagree with that. This court has said that in cases where a criminal defendant is arguing that the federal district judge must take the state law sentence into account, there is no requirement that the federal judge take the state law sentence into account. So this court has already done everything it had to do to make this argument unavailable where it helps a federal criminal defendant. What we're asking you to do is to make it unavailable where it helps the prosecution. The cases that you cite, and please correct me if I'm wrong, the cases that you cite, like Malone, the Sixth Circuit- Yes. That predates the Supreme Court's ruling in Kimbrough. And isn't that a problem for your argument? Well, I don't think so, Your Honor. I think that there have been a number of other cases that continue to recognize this principle thereafter. I'll have to concede that this is not an argument that the federal government had brought up in its brief, so I'm not prepared to address it since it was not something the government's relying upon. I would like to just spend a moment addressing the plain error versus harmless error issue. The record makes clear that counsel for the defendant did not raise a contemporaneous objection at the sentencing to the district judge's mention of New York state law or the fact that under New York state law, a five-year mandatory minimum sentence would apply to this crime, and so there was no contemporaneous objection. However, there had been no notice given to the parties, either by the government and its arguments through the PSR reports or from the district court itself, that the district court would perhaps be considering what the state law sentence would be. As I mentioned, this court in the past 24 years has had two cases that have touched on this issue, and as we've discussed, have not gone as far as we're arguing the court needs to go today in this case. For all that, doesn't that, couldn't that lead to, if we accept your line of reasoning, doesn't that lead to this problem that you're saying that whenever there hasn't been notice of an error, that there should be a relaxed standard? And if we follow that line, then one can imagine any number of errors where you would expect the, or possible errors where you would expect the lawyer to be fully cognizant of what's going on and to raise an objection. Under your line of reasoning, that's no longer necessary. It can almost be a strategic choice. I'm not going to raise this as an objection because I know that I can then later say I wasn't given notice of it. Wouldn't that affect a fundamental change in the way that we think about these kinds of proceedings? I don't think so, Your Honor. I think that this Court's holding in the Leung case and in the Villafuerte case clearly cover the situation presented here. In Villafuerte, this Court looked at whether the error arises frequently or infrequently, and whether the parties had any advance notice of the issue heading into the sentencing. And here, it's not an issue that arises frequently, as shown by the fact that this Court's only had to address it twice in the past 24 years. And it's not a question as to which the defendant had notice. So we believe that holding that harmless error review applies here. It directly follows from this Court's earlier decisions, rather than requiring an extension of those decisions. It was no surprise that he was going to upwardly depart even from the beginning of the sentencing hearing, right? Because he even asked you, he asked counsel, whether you want a fatical hearing on the coercion or the restraint issue. And he said, no, we want to proceed with sentencing today. At the very beginning, the district court said, well, I can tell you this is an upward departure here. There wasn't any request saying, we didn't know about that, Your Honor. We'd like some time to be able to respond to that. There are things that the record does not reflect fully. Where if you look at some of the earlier sentencing proceedings, where Judge Corman says, talk to the federal public defender who I discussed the case with, and he'll give you some advice about what you should do. What the federal public defender who supposedly discussed the case with Judge Corman told defense counsel is not in the record today. But at the sentencing proceeding itself, the judge sent signals that went all different ways. The prosecution was trying to get a different sentencing guidelines range that was slightly higher, still below 84 months, and the judge said, I'm not going to change the range from 12 to 18 months. I mean, for a while there, things looked good for the defendant. So obviously, it didn't end up there, and maybe it wasn't always looking good for the defendant throughout the entire sentencing proceeding, but it wasn't always as bad as it could have been. Look, I'm not sure that the guidelines are relevant because I think that this is a case that warrants an upward departure. So, like page three of the hearing. Right, and what we're saying is that's still permissible, but you just shouldn't make the upward departure starting with the five year mandatory minimum under New York State law. Thank you. Just to be clear, your client accepted the factual recitation in the PSR, right? That Mullings, your client, used force to compel an inmate to have sex with him. Right, my client did not exercise his right to a Fatico hearing at the sentencing. And I think that the district judge, I think it twice, said do you want a Fatico hearing, not just once, so there was no mistake. Right, and that's the record as I come to it. And we accept that that's what happened, yes. Thank you. Thank you. You'll have a few minutes in rebuttal, I believe, yeah. You'll have two minutes in rebuttal, so. You can also raise. Yes. If that's easier for you. Or maybe you can, maybe that's as high as it goes. As it goes, all right. Thank you. Good morning, and may it please the court, Kirill Metler, United States of America. The issue before this court is whether Judge Corman erred in sentencing the defendant, Mr. Mullings, by making passing mention of the minimum for rape under New York State law. The answer is unequivocally no. At sentencing, Judge Corman considered the party's submissions, heard from the victim herself, the defendant, Mr. Mullings, and counsel, and then announced the sentence. In doing so, the district- What do you make of the fact that the five year mandatory minimum sentence under New York law does not correlate or correspond with the offense that Mr. Mullings pleaded guilty to? Well, your honor, I think that it's not relevant because it's not relied upon. As the district court noted in the sentencing hearing, that he had looked at New York law out of curiosity. He was curious. He says it's on the record. And he makes then two observations. One that, just like federal law, there was no consent because you're an inmate. That doesn't affect at all the issue here. And at the very end of the sentencing narrative, he says, in passing, he says, and I've considered your military service, and I've considered the arguments. And so I've given you a sentence which just happens to be greater than the New York sentence of rape, which is five years. But it's appropriate under the circumstances. That's more or less the direct quote. And so if you look at all the reasons that Judge Corman gives, the fact that the guidelines here didn't reflect the nature of the crime, which was where Mr. Mullings, and he agreed to this by waving the fatico, that he in the corridor of the MCC, a federal prison not just a couple blocks from here, he in fact forcibly strained the victim, pulled her pants down, and engaged in intercourse with her, that was a fairly heinous crime. And Judge Corman mentions the fact that force was used in the narrative. And in fact, it's also mentioned in the written statement of reasons, which is also important for the court to consider, because- Not at all, Your Honor. And so what relevance does that have to our- Well, I think that it's important for the court to consider that when it came down to writing out the statement of reasons for the actual sentence, he did not include New York law because he had not considered it. He had looked at New York law out of curiosity. He considered it, but he didn't rely on it. That's correct, Your Honor. He did not rely on it. And the word rely is not used. In terms of your argument. Yes, Your Honor. Saying that's what- Yes, Your Honor. Yes, in terms of the government's submission. I don't understand what you're saying. So what is the government's position, and has it taken a position with respect to the Eighth Circuit's holding that district courts are not permitted to consider federal state sentencing disparities when determining the sentence to be imposed upon a federal defendant? Yes, Your Honor. This case and the facts of this case do not require the court to reach that question. I understand that. Yes, Your Honor. I'm asking for the government's position, or if it has taken a position on this issue in the past, wherever in the country, I'd like to know that. Your Honor, I'm not aware of whether the government's taken a position on this particular issue in the past. With respect to the government's position here in this case, the government's position is that it simply should not reach the court because the facts in this case do not rise to the level of, let's say, Malone, where in the district court in that case says- I disagree with you as to the second question, say. Yes, Your Honor. Assume the risk. What's the answer? What's your answer to the first question that Mr. Boschman asked us to consider? Well, Your Honor, in the Second Circuit decision in Johnson, for example, this court stated that the district court did not abuse its discretion by not considering the state and federal disparities between the Felon and Pescion case. So reverse. Yes. So the contrapositive of the case here. And so at least the reasoning behind the Johnson decision was such that, in effect, the policy behind the guidelines is to ensure that there is not disparity nationwide among federal courts. I think that there is a rational argument to be made that given the wide sentencing disparities between various states within different circuits, Connecticut, New York, here, for example, that it would not be consistent with the policy of the guidelines for the courts to rely or use the most important factor in sentencing their disparities. That's not to say the court could not consider or even rely in part, but that it should not sit, quote, unquote, as the Michigan state court would, for example, in Malone. Or if this courtmen here had said, I'm going to act as the New York state court would in sentencing you today. That's the position of the government on that issue. I'd just ask you about the nature of our review. I think you maintain it's a plain error review. But there was no notice before the actual sentencing that the court was likely to depart upward or give a non-guideline sentence upward. In the PSR, the only reference is to a possible downward departure recommendation because of military service. Why is that not then . . . Why is that plain error review when the only notice he received was during the sentencing hearing itself? Your Honor, there was two different hearings, so to speak, in this case. In the first time when we appeared before Judge Corman, Judge Corman asked counsel if he wanted a fatico hearing. At that point, there was a second call, there was a discussion as to whether or not the fatico hearing was going to occur. Then Judge Corman noted at that sentencing that, you know, I don't know if the guidelines are going to be relevant here. Just letting you know, counsel. Then, subsequently, there's a second sentencing hearing where, again, Judge Corman said, do you want a fatico hearing? At that point, he said, because, you know, I don't believe the guidelines are relevant here. This looks like a case for upward departure. I think he even actually disclosed that probation had recommended an upward departure of thirty-six months. I think there was notice here that Judge Corman was not going to follow the guidelines in this case. And . . . It was an obstruction enhancement, though, wasn't it? It wasn't an upward departure. Was it for the . . . at the sentencing, you talked about the higher guideline range. I thought that was for obstruction. No? No, Your Honor. The judge denied the government's motion to include a higher guidelines range based on obstruction. I would also note that there was notice because the government itself in its submission asked for an upward departure, and that was, of course, provided defense counsel prior to sentencing hearing. Well, it was . . . he said it was . . . obstruction of justice enhancement is warranted. That's two points, and then not granting acceptance or responsibility. That's right what he said before. That's what the government said right before. Yes, Your Honor. What had happened was Mr. Mullings had given an interview with the Probation Department. In that interview, he stated that he did not use force. Then, subsequently, he then stated, no, he was going to acknowledge that he had used force and waive his right to a fatico hearing. Therefore, probation issued a third addendum to the PSR the same day as the sentencing hearing, where the Probation Department then recommended that Mr. Mullings receive a two-point enhancement for obstruction of justice, and no longer receive three points that he would receive for acceptance or responsibility, increasing his guidelines by five points. At sentencing hearing, the government concurred with the recommendation of the Probation Department, which had been issued that morning. Judge Corman disagreed and stated that he did not think that it was appropriate for probation under the government, this late in the game, to make this recommendation to him, and therefore, did not include those five points on the guidelines. However, in denying the government's and probation's motion for an enhanced guideline sentence, he stated, I don't believe the guidelines are relevant here anyway. This is an upward departure case. Just to make sure that I completely understand what you're arguing with respect to whether plain error or harmless error applies, and in the context of notice, are you saying that if Judge Corman here had explicitly said, I am relying on New York law without providing notice to either side before sentencing or before imposing sentence, that . . . what would be the result of that? Would that be harmless error? Would that be plain error? What would that be? I think the government's position would be is under this provision in Villafuerte that the defendant would have to have objected at that point, and stating, Your Honor . . . What about Sosovsky? Well, Your Honor, I think there are situations where a case can be made that something is so sort of out of left field. Mr. Batchman's argument is actually cleverly very narrow with respect to this. It's that if there are really unusual circumstances that we don't ordinarily see in the criminal sentencing context, then the defendant ought to have . . . defense counsel ought to have notice. The government ought to have notice so that they can air out whatever the issues might . . . whatever issues might exist in connection with the unusual circumstances. The fact that defense counsel right there and then can object, that doesn't really help things in connection with the imposition of sentence. Why shouldn't that be harmless error as opposed to plain error? The case that defendant relies upon primarily is the Lung case. It's a little bit distinguishing here because in Lung, you had two remarks at issue. One remark sort of involving sort of possible racial issues or overtones. The first remark involved non-American citizens. The second remark was in the written statement of reasons, which involved the Asiatic people. Presumably, you could not object to the second remark that was done in the written statement of reasons. But as to the first remark, the concern that the Second Circuit had was that here you are, you're representing your client at sentencing, and it's somewhat awkward for you to object and state, well, Your Honor, I just want to make sure that you're not considering race as a factor. In that case, this court held that plain error did not apply. Here, it's not exactly as if it would have been awkward or difficult for Mr. Brown, who was counsel at sentencing, to state, well, Your Honor, are you stating that you're relying on New York law? Because I'm not sure if that's appropriate. So it's a little bit different, I think, contextually than the Lung case, for example. The government acknowledges there are situations where lack of notice and in a sort of more sort of difficult situation like the Lung case, where harmless error would apply even absent objection, but not in this situation here. But if you have a case where there is a novel grounds being relied upon, why isn't that problematic for your argument? Because in that circumstance, the lawyer is hearing it for the first time. It seems to me that your adversary makes a compelling point, theoretical point, and I'm still not clear as to your response. Yes, Your Honor. Well, I think sort of two points to answer that question. First, of course, the government would submit that Judge Corman did not rely here, and so you don't need to reach this question. But if you assume the hypothetical that was given earlier, which is that if Judge Corman had said, I hereby am relying on the minimum for rape in New York, which is five years, and that's going to be the main and most important factor in my decision, I think at that point you're given such express . . . What if he said . . . what if he gave a host of reasons and that was one of them? In other words, he doesn't say, I expressly rely, but gives a host of reasons, and reason number five or reason number six is New York law. Well, Your Honor, I understand that we're sort of trying to parse out the factual hypotheticals here. I think it's spectrum, and it's going to get harder as you get closer to the alliance, and so that we've reached the question. I think it's sort of like if you're at the hypothetical where you say I expressly rely on New York State law, it's an important factor in my decision, then I think you have to object because you have to, it's right there in front of you. If you're at the facts of our case, it doesn't matter because we don't even get there. Somewhere in the middle, that's something that I think the court has to consider in a different case. It's not the facts before it today. Thank you. If there are no further questions, Your Honor, I see my time is up. Rest of the papers. Thank you. Thank you, Mr. Maynard. Mr. Bashman. Thank you, Your Honors. At the risk of not overthinking this, I would just like to remind the court that the portion of the sentencing proceeding in which these remarks are found is the district judge's statements of reasons. No, he was referring to the oral. I know. I'm talking about the oral statement of reasons is the portion of the transcript at which the mention of New York law and the fact of the five-year mandatory minimum sentence comes up. The written statement of reasons, which is a document that is under seal and that, you know, to the extent anyone in the public is behind me, no one has access to. In fact, I barely had access to it myself. Thankfully, Judge Corman's assistant provided me with it the day before my brief was due here. But I've never seen a decision from this court that says that the non-public written statement of reasons that, like I say, is under seal, somehow overrides a district judge's mandatory oral statement of reasons under the statute that I cited earlier, 18 U.S.C. 3553C. And the written statement of reasons certainly does not disclaim reliance upon New York state law. It just doesn't mention it. We submit that given the oral statement of reasons, it's impossible to say that New York state law was not relied upon. And under those circumstances, the appropriate remedy is sending the case back so that a proper sentencing proceeding can occur when improper things will not be relied upon. Would you concede, though, that your argument would be even stronger if in the written statement of reasons, New York law was referred to? Yes. Yes, I do concede that. And it's very possible that Judge Corman, it may have occurred to Judge Corman in between his oral statement of reasons and his written statement of reasons that it was not proper to rely upon New York state law. However, that was an oral reason that he gave immediately after saying the sentence is 84 months. We submit, and of course this case doesn't present any of these issues, but if the judge had said he was relying, he considered, let's not even say relying, he considered the defendant's racial origin, his ethnic origin, his religion, the area of New York where the defendant relies, any other improper thing was in there, even if we can't directly tie it to the sentence that was imposed, if that was said during the oral argument, it would be necessary to have a resentencing to make sure that it didn't enter into the calculus. That is the Eighth Circuit rule, considering that. Correct. Correct. Unless there's any further questions, thank you. Thank you, Your Honor. Thank you. Thank you both for your thoughtful arguments. The final case, Hernandez v. Newington, is on submission. The clerk will adjourn court. Court is adjourned.